IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY LAMONT BUSH :
:
v. : Civ. No. AMD-06-1631
: Cr. No. AMD-01-0611
UNITED STATES OF AMERICA :

...oOo...

## MEMORANDUM OPINION

Larry Lamont Bush seeks relief pursuant to a motion filed under 28 U.S.C. § 2255. The government has filed its opposition and no hearing is required. The motion shall be denied.

I.

Bush was convicted by a jury on 49 of the 56 counts laid in the indictment on charges stemming from identity theft and related activities. Bush was sentenced to 105 months incarceration, a period of supervised release and ordered to pay restitution. The judgment was affirmed by the Fourth Circuit. The Fourth Circuit's summary of the factual and procedural context in which Bush's fraudulent scheme came to the attention of authorities follows:

> The investigation leading to Bush's prosecution began in September of 1998. On September 15, 1998, Detective Ellsworth Jones, an officer with the Howard County, Maryland, Police Department, received a telephone call from a Ms. Brenda Moon, who believed someone was attempting to obtain a loan in her name from Norwest Financial Bank in Maryland. Jones met with bank employees, who informed him that a woman had indeed called the bank representing herself to be Brenda Moon. The bank employees also told Jones that, during the phone call, a man could be heard in the

background, instructing "Ms. Moon." Jones and some fellow officers began surveillance at Norwest Financial, and when "Ms. Moon" called later that day to check on the status of her loan application, she was instructed to come in as soon as possible to complete the application process.

An hour after the phone call from "Ms. Moon," a man and a woman appeared together at Norwest Financial. They arrived in a Jeep Grand Cherokee driven by a man. Upon entering the bank, the woman identified herself as "Ms. Moon" and was led away to complete the loan process. The man, who identified himself as Larry Bush, remained in the lobby while "Ms. Moon" completed her loan process. After "Ms. Moon" and Bush exited the bank, Jones followed them to the Jeep. "Ms. Moon" opened the passenger door to the Jeep, hiked up her skirt as if she was about to enter the Jeep, and placed her purse on the floor of the passenger side of the car. Before she entered the Jeep, however, Jones placed her under arrest. The woman identified herself as Yvette Canty. Jones and another officer then detained Bush because, given the bank employee's statement that a male voice was heard during the phone conversations, Jones concluded that he "had good reason to believe that at that point that he was probably involved."

Jones then conducted a search of the vehicle. The search revealed information regarding the fraudulent loan, including a computer print-out of a credit report for Brenda Moon as well as a sheet of paper containing handwritten information about Brenda Moon. Jones also discovered a phone bill in Bush's name that listed an address of 122 North Wolfe Street in Baltimore. Jones then placed Bush under arrest.

Following her arrest, Canty waived her *Miranda* rights and provided the following written statement to Jones:

> I Yvette went in the loan office and signature for a loan that was not mine. I was ask [sic] to do this because of problems I have [sic] money and drugs.

> All the paper that I need [sic] to use was give to [sic] me by Larry Bush. All information too. I would had been pay [sic] for this if it happen.

Canty also gave several oral statements to Jones, indicating that Bush lived at the North Wolfe Street address, and that Bush had a computer at that address that contained all of the information on the fraudulent loan.

Jones obtained a search warrant for Bush's 122 North Wolfe Street residence. In the course of executing the warrant, Jones seized two computers which produced evidence against Bush. Based on that evidence, Bush was prosecuted in Maryland state court for bank fraud.

Subsequent investigation revealed that Bush had engaged in an extensive scheme to defraud numerous merchants, including automobile dealers, banks, and, through the fraudulent negotiation of social security checks, the United States.

II.

Bush alleges four grounds in support of relief. First, he alleges that the court abused its discretion when it failed to recuse itself and thereby denied him a fair trial. Second, he alleges that the denial of his motion to replace counsel violated his right to effective assistance of counsel occurred. Third, he alleges that the government engaged in vindictive prosecution and prosecutorial misconduct in seeking the indictment and during the trial. Fourth, he alleges that he did not have effective counsel during trial and his appeal process. None of his claims has merit.

III.

In order to raise the recusal issue as Bush is seeking to do so now, Bush is required to have raised the issue at trial and on direct appeal. *Murray v. Carrier*,

477 U.S. 478, 490-492 (1986). While Bush did file a recusal motion pro se prior to trial, which was denied by this court, this issue was never raised on appeal. Bush has failed to allege any facts tending to prove the court's "objectionable inclination or disposition" giving "fair support to the charge of a bent of mind that may prevent or impede impartiality or judgment." *Berger v. United States*, 255 U.S. 22, 33-35 (1921). Furthermore he has not suggested the existence of evidence that would "establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge." *United States v. International Business Machines Corp.*, 618 F.2d 923, 928 (2nd Cir. 1980). This claim is waived and, in any event, lacks merit.

Similarly, Bush's assertion that the court infringed his right to effective assistance by denying his second motion to discharge counsel and to permit him to represent himself lacks merit. This court granted the defendant's first request for alternate counsel and replaced an attorney from the Public Defender's Office with successor counsel. The defendant's second attempt to remove counsel was viewed by this court as manipulative, an effort to delay the trial, to have a lawyer that he could control, and as an attempt to make a mockery of the proceedings. The Fourth Circuit found no error in the court's actions. As the Fourth Circuit has already ruled on this issue, it is not cognizable in a §2255 action. *Boekenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999).

The assertion that the government engaged in vindictive prosecution and prosecutorial misconduct is clearly without merit. In *United States v. Johnson*, 325 F.3d 205, 210 (4th Cir. 2003), the Fourth Circuit described the stringent standard for vindictive prosecution claims:

> A criminal defendant faces a substantial burden in bringing a vindictive prosecution claim. A "presumption of regularity" attends decisions to prosecute. To establish prosecutorial vindictiveness, a defendant must show through objective evidence that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus.

In reviewing a claim for prosecutorial misconduct, the court must determine whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 1993). The test for reversible prosecutorial misconduct has two components: "(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993).

Clearly, the government's conduct in this case does not remotely satisfy the burden established by *Johnson* and *Mitchell*. Most of Bush's claims of possible prosecutorial misconduct should have been raised during the trial but were not; they have been waived and are not properly presented in this §2255 motion. Furthermore, the defendant's claims that the government knowingly presented perjured testimony are wholly unsubstantiated and mere conclusory allegations. There is no basis whatsoever for this claim.

Finally, in order to establish that there was a denial of effective assistance of counsel entitling one to post conviction relief or that there was a conflict of interest created, Bush must project facts that "counsel's representation fell below an objective standard of reasonableness," and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984)). "A convicted defendant making a claim of ineffective counsel must identify the acts or omissions of counsel that are alleged not to have been the result of professional judgment." *Strickland*, 466 U.S. at 690. The court should then determine whether, under the circumstances, counsel's conduct was "outside the wide range of professionally competent assistance." *Id.* Alternatively, under the *Strickland* inquiry, the court may first determine whether the petitioner suffered prejudice before considering whether counsel's conduct was reasonable. *Id* at 697.

It is clear that Bush is not entitled to relief on his claims of ineffective assistance of counsel. Bush alleges conclusory and generalized claims that his counsel acted ineffectively by not filing proper motions and not objecting to properly introduced evidence. In fact, defendant's counsel filed timely motions when appropriate. This court has thoroughly reviewed all of the defendant's claims of inadequate counsel and has previously ruled that the defendant was acting in a manipulative manner. Nothing in the defendant's §2255 motion leads this court to change its opinion. The defendant's allegations fail to satisfy either prong of the *Strickland* test. None of the defendant's

allegations show that his attorney acted was outside the realm of normal professional conduct or sound trial strategy or that the result of the proceeding would have been different but for unprofessional errors made by his attorney.

## IV.

For the reasons set forth above, the motion to vacate, set aside or correct sentence shall be denied. An order follows.

Date: September 24, 2007

_____
ANDRE M. DAVIS
UNITED STATES DISTRICT JUDGE